UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAHRI ASAD CUNNINGHAM,<br><br>Defendant. | CASE NO. 2:23-cr-00090-JHC-3<br><br>ORDER |

**I**

**INTRODUCTION**

This matter comes before the Court on a number of Defendant Jahri Asad Cunningham's motions, including a Motion to Suppress, two Motions to Dismiss, a pro se motion, and two motions to file over-length briefs.  Dkt. ## 291, 292, 293, 294, 305, 319.  The Court has reviewed the materials filed in support of and in opposition to the motion, the rest of the case file, and the governing law.  Being fully advised, the Court DENIES the motions.  Dkt. ## 291, 293, 294, 292, 305, 319.

ORDER - 1

## II

### BACKGROUND

Cunningham is charged with three counts of wire fraud (Count 5, 13, and 16) and one count of money laundering (Count 24). Dkt. # 1 at 14-18. The charges are connected to a larger scheme related to eviction protection and rental assistance program loan applications. *See* Dkt. # 1 at 3-14.

On February 24, 2022, FBI agents sought and obtained a search warrant for Paradise Williams's home in Kent, Washington. Dkt. # 293-1. Cunningham is not mentioned in this warrant. *See generally id.* Williams is Cunningham's sister and, as alleged in the indictment, was the leader of a scheme to defraud multiple COVID-19 relief programs. *See* Dkt. # 1 at 3-14; Dkt. # 293 at 2. The warrant granted authority to seize and search digital devices reasonably attributed to Williams, including cell phones and computers. Dkt. # 293-1 ¶ 61, 65. The warrant identified the process agents would use to secure data from Williams's devices, explaining that agents would either seize the devices or "make an image copy of the data on the digital devices or other electronic storage media, onsite"; and it said, "[g]enerally speaking," "imaging is the taking of a complete electronic picture of the device's data, including all hidden sectors and deleted files." *Id.* ¶ 74, *see also id.* ¶ 77.

The warrant was executed on March 4, 2022. Dkt. # 293-2. As relevant to these motions, an iPhone 13 Pro Max identified as iPhone (1) or Item 1 (the phone) was searched. Dkt. # 293-6 at 2-3. Agents extracted data from the phone and left it at the residence. *Id*. The agents described the extraction process as follows: they "[s]et device to airplane mode, turned off wifi and Bluetooth" and "[u]sing profile for Apple A2341 (iPhone 12 Pro) on Cellebrite UFED

ORDER - 2

7.44.0.205, attempted Advanced Logical Extraction" on the phone.[1]  Dkt. # 293-6 at 3.  The agents noted this as "successful" but then said that there was "[n]o file system extraction option available."  *Id.*; *see also* Dkt. # 293-11 at 3 ("The images for the iPhone cellular phones identified above [including iPhone (1)] were made using specialized forensic software called Cellebrite UFED 4PC.  In my training and experience, this forensic software creates an accurate and reliable copies of a cellular device, and I have regularly used Cellebrite to obtain extractions of cellular devices in the past.").  Cunningham says that, because the notes say that "no file system" was available, the Cellebrite tool could not access or extract the cell phone's full file system and the Advanced Logical Extraction was "only a lesser form of extraction."  Dkt. # 293 at 9 (citing Dkt. # 293-7, Cellebrite's published materials); *see also* Dkt. # 293-11 (expert testimony supporting Cunningham's position).

On June 3, 2022, agents sought and obtained a new warrant to review the extracted data, including that from the phone.  *See* Dkt. # 293-3.  This warrant included additional possible fraudulent conduct and specifically identified texts between Williams and Cunningham indicating he was a participant in the scheme.  *Id.* ¶ 4, 17.  The review revealed texts between Williams and Cunningham implicating Cunningham.  *See* Dkt. # 298 at 7-33.

The Government continued to build its case and ultimately a grand jury sitting in the Western District of Washington returned a 26-count indictment charging Williams, Cunningham, and others with various counts of wire fraud and money laundering.  *See* Dkt. # 1.

---

[1] Cellebrite is a specialized forensic software program used in cell phone forensics and digital investigations.  Dkt. # 293-11 at 2.

ORDER - 3

**III**

**DISCUSSION**

A.      Motion to Suppress

Cunningham asks the Court to suppress text messages extracted from iPhone (1) as well as evidence derived from the search of the messages. *See* Dkt. # 293. In addition to arguing on the merits, the Government says Cunningham lacks standing to challenge the search and seizure of the phone. *See* Dkt. # 298. As explained below, Cunningham has not established standing, and thus, his motion must be denied.

"As a prerequisite to establishing the illegality of a search under the Fourth Amendment, a defendant must show that [they] had a reasonable expectation of privacy in the place searched." *United States v. Heckenkamp*, 482 F.3d 1142, 1146 (9th Cir. 2007). A reasonable expectation of privacy exists if a person can "demonstrate a subjective expectation that [their] activities would be private, and [they] must show that [their] expectation was one that society is prepared to recognize as reasonable." *United States v. Bautista*, 362 F.3d 584, 589 (9th Cir. 2004).

Cunningham says he has a privacy interest in his own private communications with his sister. Dkt. # 293 at 11-15. He does not say that he had a reasonable expectation of privacy with respect to iPhone (1) or that the data derived from it belonged to him, but he draws a distinction between the search of iPhone (1) and the extracted data and that of the search of his own private text messages contained within that data.[2] Dkt. # 293 at 11-15.

Cunningham reminds the Court that the Ninth Circuit instructs courts to "analyze the physical phone and its data separately." *United States v. Hunt*, 153 F.4th 858, 865-68 (9th Cir.

---

[2] Throughout his briefing, Cunningham also draws multiple distinctions between the search of a phone messages versus those stored on iCloud, data extracted at Williams's home versus on an FBI database later, the scopes of the March and June warrant, and the definition of "imaging." But none of these distinctions establish standing as none show a "reasonable expectation of privacy" in messages

ORDER - 4

2025) (considering the abandonment doctrine).  But regardless, both the phone and the data belonged to and were in the possession of Williams—not Cunningham—and Cunningham had no reasonable expectation with respect to iPhone (1) or the data extracted from it.  *See Alderman v. United States*, 394 U.S. 165, 171-72, (1969) ("The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence."); *United States v. Stringer*, 739 F.3d 391, 396 (8th Cir. 2014) (holding defendant "lacks standing to challenge the search of the Samsung cell phone belonging to G.R." even though the phone contained defendant's private messages"); *United States v. Gonzalez*, 560 F. App'x 554, 558 (6th Cir. 2014) (affirming a denied motion to suppress "on the grounds that [defendant] lacked standing to challenge the admission of text messages retrieved from a phone account that was registered to someone else.").[3]

Cunningham's "private messages" theory does not establish standing.  And he has not pointed to any caselaw that finds a third party to have a reasonable expectation of privacy with respect to messages that they sent to another individual's phone.[4]  *See generally* Dkt. ## 293, 306.  That the text messages were subject to end-to-end encryption does not necessarily establish an objective expectation of privacy.  Dkt. # 293 at 15.  This might establish an expectation of privacy with the service provider and anyone seeking to intercept the messages, but it does not

---

[3] obtained through the execution of a valid search warrant for Williams's phone and data.  *See generally* Dkt. # 293.

[3] The parties cite no Ninth Circuit authority directly on point here, and the Court knows of no such authority.  *See generally* Dkt. ## 293, 298, 306.  The Court considers out-of-Circuit authority as persuasive on the issues raised.

[4] Cunningham does cite Washington precedent, which provides a greater privacy right to messages.  *State v. Hinton*, 179 Wash. 2d 862, 877, 319 P.3d 9, 12 (2014).  But "[i]t is well established that article I, section 7 [of the Washington Constitution] is qualitatively different from the Fourth Amendment and provides greater protections," and the state inquiry "is broader than the Fourth Amendment's reasonable expectation of privacy inquiry."  *Id.* at 868.

ORDER - 5

establish an expectation of privacy with respect to the messages in Williams's possession on iPhone (1).

Cunningham cites *United States v. Warshak*, 631 F.3d 266, 288 (6th Cir. 2010). Dkt. # 293 at 13-14. There, the Sixth Circuit found a reasonable expectation of privacy in e-mails stored with an internet service provider. *Warshak*, 631 F.3d at 288. But the text messages here were with an individual who could take those messages and do whatever she liked with them.[5] *See e.g.*, *United States v. Rombough*, 2024 WL 3304799, at *2 (N.D. Cal. July 3, 2024) (finding defendant lacked standing to challenge warrants authorizing searches of another's iCloud account); *United States v. Scott*, 2015 WL 4644963, at *4 (E.D. Mich. Aug. 5, 2015) (finding no "reasonable expectation of privacy in the texts to and from, and records related to," the phone even where Defendant owned the account associated with the phone when it was in another person's possession).

Cunningham might have had a subjective belief that his messages were private, but he has not shown that there was a reasonable expectation of privacy to iPhone (1), the extracted data, or the private messages contained within that data. Thus, Defendant has not established standing to his Fourth Amendment challenge and the Motion to Suppress must be denied.

B.       First Motion to Dismiss

Cunningham brings a motion to dismiss for failure to establish proper venue in this District because, he says, the indictment fails to allege that Counts 5, 13, and 16 (all for wire fraud) originated in the Western District of Washington. Dkt. # 291, 303.

---

[5] Cunningham's reliance on *United States v. Comprehensive Drug Testing*, 513 F.3d 1085 (9th Cir. 2008), *rev'd and aff'd in part en banc*, 621 F.3d 1162 (9th Cir. 2010), is inapt. There, the materials at issue were healthcare records and the government raised issues related to associational standing, which is not at issue here. *Id.* at 1096.

ORDER - 6

"[V]enue is established in those locations where the wire transmission at issue originated, passed through, or was received, or from which it was 'orchestrated.'  In other words, venue may lie only where there is a direct or causal connection to the misuse of wires."  *United States v. Pace*, 314 F.3d 344, 349-50 (9th Cir. 2002) (citing *United States v. Palomba*, 31 F.3d 1456, 1461 (9th Cir.1994)).  "[O]nly the indictment may be considered in pretrial motions to dismiss for lack of venue, and [] the allegations must be taken as true."  *United States v. Mendoza*, 108 F.3d 1155, 1156 (9th Cir. 1997).  "[A]n indictment should be: (1) read as a whole; (2) read to include facts necessarily implied; and (3) construed according to common sense."  *United States v. Buckley*, 689 F.2d 893, 899 (9th Cir. 1982).

The indictment alleges that on or about August 7, 2020 Cunningham and Williams knowingly transmitted or caused to be transmitted an "[i]nterstate wire originating in Washington to an SBA server outside Washington to submit EIDL application for 'JahriLLC' using Cunningham's identity."  Dkt. # 1 at 15 (capitalization normalized); *see also* Dkt. # 1 at 16 (alleging other wires "originating in Washington" for Counts 13 and 16).  The background section and the paragraph preceding the counts specify that the activities took place "in King County, within the Western District of Washington, and elsewhere."  Dkt. # 1 at 2, 14 ¶ 42; *see also id.* at 9-10 (alleging that Defendant and others "pose[d] fraudulently as landlords for property located within King County" and specifically describing Defendant's actions in this scheme); *id.* at 2 (describing how King County paid out the emergency rental assistance).

The charges specifically say the wire originated in Washington and throughout the indictment the activities are continuously linked to King County, which is located in the Western District of Washington.  When read as a whole and construed according to common sense, the indictment properly alleges both a scheme that occurred in the District and a direct or causal connection to wires that originated, passed through or were received in the District.  The

ORDER - 7

Government must still prove venue at trial, Dkt. # 300 at 3, but that burden does not apply here and, at this stage, the indictment sufficiently alleges venue.  The First Motion to Dismiss must be denied.

C.      Second Motion to Dismiss

Cunningham also seeks to dismiss all charges against him based on the Government's failure to preserve evidence.  Dkt. # 294.  Cunningham says his due process rights were violated by the Government's "failure to take [iPhone (1)] into evidence" and that this "was a clear violation of standard digital evidence collection protocol," especially where only a partial extraction could be done.  Dkt. # 294 at 5; *see also* Dkt. # 294-4.  The Government disputes that the Government failed to preserve evidence, and says, even if it did, Cunningham's argument fails.  Dkt. # 301.

The Ninth Circuit has recognized as follows:

> Two Supreme Court cases set out the test we apply to determine when the government's failure to preserve evidence rises to the level of a due process violation.  In *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984), the Court held that the government violates the defendant's right to due process if the unavailable evidence possessed "exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."  In *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988), the Court added the additional requirement that the defendant demonstrate that the police acted in bad faith in failing to preserve the potentially useful evidence.

*United States v. Cooper*, 983 F.2d 928, 931 (9th Cir. 1993).  "The applicability of the *Youngblood* bad-faith requirement depends on whether the evidence was material exculpatory evidence or simply potentially useful evidence."  *United States v. Del Toro-Barboza*, 673 F.3d 1136, 1149 (9th Cir. 2012) (citing *Illinois v. Fisher*, 540 U.S. 544, 549 (2004)).

Cunningham asserts that the materials were potentially exculpatory but does not say how the phone or any data on it that was not captured by the extraction could be exculpatory.  Dkt. #

ORDER - 8

294 at 7-8.  He insists only that the due process violation arises because he did not get a chance to do his own extraction or check the accuracy of the extraction.  *Id.*; *United States v. Drake*, 543 F.3d 1080, 1090 (9th Cir. 2008) ("The exculpatory value of an item of evidence is not 'apparent' when the evidence merely '*could have*' exculpated the defendant.") (original italics); *see, e.g.*, *United States v. Peterson*, 2017 WL 5709567, at *5-6 (W.D. Mo. Nov. 27, 2017) ("The lost contents of [the] cell phone are not clearly exculpatory because Defendant cannot point to anything specific that would have exculpated him") (boldface normalized).  Notably, he also does not specify what in the phone he believes would show an inaccuracy in the extraction.

The materials may be potentially useful under *Youngblood*.  *United States v. Zaragoza-Moreira*, 780 F.3d 971, 978 (9th Cir. 2015) ("Potentially useful evidence, as defined in *Youngblood*, is 'evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.'").  But regardless, bad faith "turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed," and Cunningham has not shown bad faith. *Cooper*, 983 F.2d at 931.  Cunningham says only that the Government "surely" knew that defense would want to examine the phone and full data file; but again, Cunningham has not pointed to anything exculpatory that is apparent now.  *See* Dkt. # 294 at 6-7.  Nor does he point to anything showing that the exculpatory nature of the evidence would have been apparent "at the time it was lost or destroyed."  Cunningham and his expert speak to possible negligence or failure to follow best practices by the agents, but that is not a showing of bad faith.  Dkt. # 294-4; *see United States v. Sivilla*, 714 F.3d 1168, 1170, 72 (9th Cir. 2013) (upholding a finding of no bad faith for failure to preserve evidence when the Government sold defendant's car because it "was not obvious" that the car itself was exculpatory when there were "poor quality" photos of the car); *United States v. Robertson*, 895 F.3d 1206, 1213 (9th Cir. 2018) (upholding a finding of

ORDER - 9

no bad faith where "the government's conduct, while not entirely blameless, fell within a general range of reasonableness.").

Cunningham's argument fails for another reason.  He does not explain why he could not obtain comparable evidence.  IPhone (1), which Cunningham is now saying should have been preserved, belonged to Williams.  *See* Dkt. # 294-1.  His primary connection with the phone seems to be the text messages the two shared, and presumably, Cunningham should be able to obtain these messages himself without iPhone (1) in his possession.  *See e.g.*, *United States v. Sullivan*, 2020 WL 5351030, at \*5-6 (D. Haw. Sept. 4, 2020) (finding no due process violation for incomplete Cellebrite extraction of iPhone in part because defendant "has not shown that comparable evidence could not be obtained by other reasonably available means").

For these reasons, Defendant has not shown the Government's failure to preserve the phone was a due process violation, and thus Defendant's Second Motion to Dismiss must be denied.[6]

D.    Cunningham's Pro Se Motion

Cunningham moved pro se to submit a motion "to hold the Government to its record representations and preclude out-side record foundation repair."  Dkt. # 319 (capitalization normalized); *see also* Dkt. # 315-1.  After receiving this motion ex parte via email, the Court provided the Government an opportunity to respond.  *See* Dkt. ## 320, 323.

"When a party is represented by an attorney of record in a case, the party cannot appear or act on his or her own behalf in that case until after the party requests by motion to proceed on his or her own behalf, and the court permits self-representation following a hearing on the

---

[6] Defendant asks in the alternative for the Court to exclude the evidence.  Defendant is not prejudiced from making this request in a motion in limine on grounds other than the due process issue raised here.

ORDER - 10

matter." L.CrR. 62.2(b)(4). Although Cunningham now seeks to move pro se, *see* Dkt. # 318, he is still represented by counsel and the Court will not exercise its discretion to hear the motion. Thus, the Court denies the motion without prejudice.

E.      Remaining motions

Cunningham's remaining motions to file overlength briefs are denied as moot. *See* Dkt. ## 292, 305.

## IV

### CONCLUSION

For these reasons, the Court DENIES Defendant's Motion to Suppress at Dkt. # 293, defendant's Motion to Dismiss at Dkt. # 291, Defendant's Motion to Dismiss at Dkt. # 294, Defendant's pro se motion at Dkt. # 319, Defendant's Motion for Leave to File Over-length Motion and Briefs at Dkt. # 292, and Defendant's Motion for Leave to File Over-length Motion and Briefs at Dkt. # 305.

Dated this 8th day of June, 2026.

John H. Chun
John H. Chun
United States District Judge

ORDER - 11